FRED W. JONES, Jr., Judge.
A worker’s compensation insurer filed suit against an injured employee to terminate his benefits at 175 weeks, as provided in La.R.S. 23:1221(4)(h). The employee answered, denying he was able to return to work. In addition, the employee filed a reconventional demand alleging total and permanent disability and praying for penalties and attorney’s fees for the insurer’s failure to pay the proper rate of compensation. The trial court rendered judgment for the insurer and the employee appealed.
Four specifications of error present three issues on appeal:
(1) Whether the trial court erred in not finding total and permanent disability.
(2) Whether the trial court erred in awarding only the minimum compensation rate of $55 per week for 175 weeks.
(3) Whether the trial court erred in failing to award the penalty and attorney’s fees.

Factual Context

Edward Thomas was employed by Herbert Minniefield to cut and haul logs. Min-niefield was under contract with Pulpwood Producers, Inc. (“Pulpwood”). Georgia Casualty and Surety Company was the workers’ compensation carrier for Pulpwood, and provided coverage for Minnie-field’s employees.
On September 16, 1981, Thomas cut the inside of his right knee, just below the knee joint, with a chain saw. He was taken to the emergency room at Lincoln General Hospital where he was seen by Dr. Byram. The physician cleaned and sutured the laceration.
On several occasions over the next three months Thomas was seen and treated by *548 Dr. Bleich, a general surgeon. Dr. Bleich subsequently released Thomas to return to work with a 5-10% disability of his right knee. This was based on Thomas’ subjective complaints of pain and weakness in the knee. The only objective symptoms Dr. Bleich found at the end of the three-month period were a small knot at the site of the laceration and slight atrophy due to non-use of the leg. Dr. Bleich was of the opinion that the atrophy would disappear if Thomas used the knee.
On February 2, 1982, at the request of his attorney, Thomas was examined and treated by Dr. Etheredge, an orthopedic surgeon in Shreveport. Dr. Etheredge saw Thomas again on February 15, 1982, and a third time just prior to trial on October 22, 1984. Dr. Etheredge found calcification at the site of the laceration, and concluded Thomas had a 15% physical impairment and should not return to work because he could not perform the squatting, kneeling and walking on uneven ground required of laborers in the pulpwood industry. He said Thomas was able to do light work but could not perform strenuous physical labor.
In preparation for trial and at the request of the insurer, Thomas was examined by Dr. Belchic, another orthopedic surgeon, on July 17, 1984. Dr. Belchic conducted a complete examination and assigned only a 2.5% permanent partial disability to the knee. He was of the opinion that Thomas could return to work as a pulpwood cutter.
Minniefield testified Thomas was a good worker. Thomas refused to return to work, despite Minniefield’s offer of employment.
Thomas has a second-grade education, cannot read or write, and has performed heavy manual labor all of his life. He was 57 years old at the time of the accident and 60 years old at the time of trial. Thomas testified his knee “gives way” and that it is painful when used strenuously. Thomas also stated he has no family, lives with a female and helps her pay the $50 monthly rent when he is able. Thomas has not tried to work since the accident.

Disability

Thomas contends the trial court erred in not finding him totally and permanently disabled.
The law in effect at the time Thomas was injured defined permanent total disability as inability “to engage in any gainful occupation for wages, whether or not the same or similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience”. La.R.S. 23:1221(2). In view of the evidence described, we cannot say that the trial court was clearly wrong in its finding of fact that Thomas is able to return to work, and has no more than a 15% partial disability of the knee for which he was entitled to compensation under La.R.S. 23:1221(4)(h) for a period of 175 weeks.

Rate of Compensation

Thomas contends the trial court erred in awarding the minimum compensation of $55 per week for 175 weeks.
At the time of Thomas’ injury, La.R.S. 23:1221(4)(h) provided:
In the following cases, the compensation shall be as follows:
(h) For the loss of a leg, sixty-six and two-thirds per centum of wages during one hundred seventy-five weeks.
Section 1021(7)(d) stipulates in pertinent part:
‘Wages’ means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows:
(d) If the employee is employed on a unit, piecework, commission or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six period and multiplied by four.
Thomas was paid by the cord of wood cut and hauled. Minniefield paid his employ *549 ees $8 a cord if there were two employees and $10 a cord if there were three. Minnie-field only had one truck and usually had two employees. Thomas was ordinarily paid $4 a cord.
After this injury, Thomas was paid the minimum of $48 per week until the law changed, and then he was paid the new minimum of $55. In February 1982, Thomas complained about the rate. Zonie Harris, the insurer’s claims manager, talked to Pulpwood, which had the only records available as to how many cords of wood were delivered by Minniefield during the 26-week period and also had the payroll records which showed how much Thomas was actually paid during this period.
The payroll records reveal that Thomas actually received only $1734.76. Harris divided this number by 130 days, based on information Thomas worked an average of five days a week, and calculated an average daily wage of $13.34. This multiplied by four is $53.36, and two-thirds of this amount is $35.75. Thus, Harris calculated Thomas was only entitled to the minimum of $55.
Thomas argues the evidence showed his gross earnings to be $2,321.72, instead of the $1,754.76 figure used by the insurer. Thomas also argues he could not have worked five days a week, or a total of 130 days, because work could not be performed in inclement weather and when equipment broke down. Thomas contends the evidence indicated he worked 67 days in the 26-week period preceding the accident.
The trial court found as a fact that the payroll records indicated Thomas’ gross wages were $1,734.76 during the 26-week period. Since the evidence supports this finding, it is not manifestly erroneous.
As for the number of days worked, the evidence does not support a finding that Thomas worked five days per week. Even if we use four days a week, or a total of 104 days, the weekly compensation rate would still fall below the $55 per week minimum.

Penalty and Attorney s Fee

Thomas contends the trial court erred in not awarding a penalty and attorney’s fees for the insurer’s failure to continue paying benefits in the proper amount.
The proper rate of compensation was paid. Assessment of the penalty and attorney’s fees would be inappropriate under the facts and circumstances of this case.

Decree

For the foregoing reasons we affirm the judgment of the district court, at appellant’s cost.